## HAYMAN *v.* WAKEHAM.

1. DEEDS—MENTAL CAPACITY.
   One has sufficient mental capacity to execute a valid deed if competent to understand the business in which he is engaged, to know the extent and value of his property, and how he wants to dispose of it, and to keep such facts in his mind long enough to plan and effect the conveyance without prompting or interference from others.

2. SAME—UNNATURAL CONVEYANCE—BURDEN OF PROOF.
   In a suit to set aside a deed whereby the grantor, when 72 years of age, and in poor health, conveyed his property to his second wife, whom he had just married, to the exclusion of his children, the circumstances do not operate to shift the burden of proof as to mental capacity upon the defendant.

Appeal from St. Clair; Law, J. Submitted April 23, 1903. (Docket No 47.) Decided May 29, 1903.

Bill by Jennie Hayman and others against Harriet G. Wakeham to set aside certain deeds. From a decree dismissing the bill, complainants appeal. Affirmed.

*George G. Moore* (*Atkinson & Atkinson*, of counsel), for complainants.

*Lincoln Avery* (*Avery & Walsh*, of counsel), for defendant.

MONTGOMERY, J. This case presents a question of fact. We have had the benefit of elaborate briefs and full oral argument. A statement of the case and the conclusions of the circuit judge are taken from the opinion of the circuit judge:

"The complainants in this cause are the daughters and sons and heirs at law of Richard Wakeham, deceased. The defendant is the second wife of the said Richard Wakeham, deceased, and the stepmother of complainants. Defendant married said Richard Wakeham in 1897. After the said marriage Richard Wakeham went to the defendant's home, where he lived with his said wife until his death, which occurred on October 30, 1900.

"On January 27, 1898, and about three months after the said marriage, Richard Wakeham and the defendant, his wife, joined in a deed of certain real estate owned by him to one John E. Knapp, and the said Knapp on the same day made a deed to Richard Wakeham and the defendant, his wife, thus creating an entirety of interest in said real estate in the husband and wife. Another deed was afterwards made by Richard Wakeham direct to the defendant, conveying a part of the property described in the first deed. This bill is filed to set aside these deeds on the following grounds: *First*, that, at the time said deeds were made, the said Richard Wakeham was mentally incompetent; *second*, that undue influence was exerted over the said Richard Wakeham by the defendant, whereby he was induced to make said conveyances.

"The evidence shows that Richard Wakeham was very sick in the fall and winter of 1896 and in the winter and spring of 1897. He was a man about 72 years of age at the time of his said marriage, and it is quite certain that he was never physically strong after such sickness up to the time of his death, and undoubtedly not as strong mentally after the time of said sickness as he had been in former years. The evidence of undue influence in said case is remote and inferential, and hardly rises to the dignity of legal proof.

"The rule to be applied in this case, in reference to the mental competency of Richard Wakeham, has been declared many times in our courts, and is whether, at the time he executed the deeds in question, he had sufficient mental capacity to understand the business in which he was engaged, to know and understand the extent and value of his property, and how he wanted to dispose of it, and to keep these facts in his mind long enough to plan and effect the conveyances in question without prompting and interference from others. Can any court say, under the testimony and facts of this case, that he did not have such mental capacity as above described? I think not.

"It is argued that the daughters and sons of Richard Wakeham were the natural objects of his bounty, and the fact that the property in question was conveyed by him to the defendant is in itself such an indication of mental incapacity as operates to shift the burden of evidence on the question of mental capacity to defendant, and this legally requires her to affirmatively show that Richard Wakeham had the required mental capacity at the time of the execution of the instruments in question. The Supreme Court of this State has uniformly held the contrary doctrine. While it may be said that his blood relations were the natural objects of his bounty, his bounty is not limited by blood relationship, nor have his blood relations any natural or inherent right to his property. He may dispose of his property as he pleases, and it is not an indication of mental incapacity that he gave the defendant, his wife, the property in question, thus excluding his sons and daughters from sharing in that part of his estate.

"It appears by affirmative evidence in this case that, at the time he executed the first conveyance in question, he was not weak enough to be a mere instrument in any one's hands. There can be no fatally undue influence without a person incapable of protecting himself, as well as a wrong-doer to be resisted. There is no evidence that either existed in this case.

"As to Michigan authorities upon the questions I have discussed I cite *Latham* v. *Udell*, 38 Mich. 238; *Pierce* v. *Pierce*, Id. 412; *Spencer* v. *Terry's Estate*, 127 Mich. 420 (86 N. W. 998)."

A careful examination of the record convinces us that this opinion fairly states the facts and the law of the case, and the decree will be affirmed, with costs of this court.

The other Justices concurred.